## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

PATRICIA JOSEPH,   :
          :
    Plaintiff,   :
          :
  VS.      :
          :  1: 10-CV-114 (WLS)
MICHAEL J. ASTRUE,   :
Commissioner of Social Security, :
          :
    Defendant.  :

_____

## RECOMMENDATION

The Plaintiff herein filed this Social Security appeal on August 24, 2010, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations.   Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).   All administrative remedies have been exhausted.

### LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).   The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401

(1971).   In reviewing the ALJ's decision for support by substantial evidence, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner.   "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."   *Bloodsworth*, 703 F.2d at 1239.   "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."   *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five step sequential evaluation process.   20 C.F.R. § 404.1520.   In Step One, the Commissioner determines whether the claimant is working.   In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities.   At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations.   At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work.   Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

The Plaintiff filed an application for Supplemental Security Income benefits with a protective filing date of April 16, 2006, alleging disability since January 15, 2005 due to mental problems and learning problems.   (T- 121-123, 142-146).   Her claims were denied initially and upon reconsideration.   (T – 69-70).   A hearing was held before an ALJ in Thomasville, Georgia on June 25, 2008.   (T- 41-68).   Thereafter, in a hearing decision dated August 20, 2008, the ALJ determined that the Plaintiff was not disabled.   (T-9-23).   The Appeals Council denied review on June 25, 2010,

making the August 2008 decision the final decision of the Commissioner.   (T-1-6).

***Statement of Facts and Evidence***

The Plaintiff was fifty-three (53) years of age at the time of the ALJ's decision.   (T- 142).   She completed the eleventh grade and has past relevant work experience as a child monitor, cafeteria worker, and a home attendant.   (T- 48, 147, 150).   As determined by the ALJ, Plaintiff suffers from severe impairments in the form of borderline intellectual functioning and mild depression.   (T- 14). The ALJ found that the Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and further, that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with certain restrictions.   (T- 17-18). The ALJ concluded that the Plaintiff could not return to her past relevant work.   (T - 21).   After receiving vocational expert testimony, the ALJ determined that the Plaintiff could perform jobs which existed in substantial numbers in the national economy and thus she was not disabled.   (T- 21-22).


## DISCUSSION

The Plaintiff asserts that the ALJ failed to properly consider the opinions of disability issued by treating and consultative physicians.   Specifically, the Plaintiff maintains that the ALJ failed to properly credit the opinions of disability issued by Drs. Vandewalle, Wager and Willers.

Pursuant to 20 C.F.R. § 404.1527(e)(2), the Commissioner will "consider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the Commissioner."   "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."   20 C.F.R. § 404.1527(e)(1).   Good cause to discount the opinion of a physician has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence

supported a contrary finding.   We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted).   As the *Lewis* court noted, "[w]e are concerned here with the doctors' evaluations of [the plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition." *Id.*

"Absent 'good cause', an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight'. . . With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so."   *Winschel v. Comm'r. of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).

Medical records reveal that the Plaintiff sought treatment for stress at the Georgia Pines Mental Health facility beginning in February 2006, and was seen by Georgia Pines staff members on multiple occasions between February 14, 2006 and April 22, 2008.   (T – 253-300).   Based on Plaintiff's treatment at Georgia Pines, Dr. Vandewalle issued findings regarding Plaintiff's mental residual functional capacity in January 2007 and March 2008.   (T – 232-252).   In January 2007, Dr. Vandewalle issued findings that the Plaintiff suffered from depressive syndrome with extreme limitations in social functioning and concentration, persistence and pace. (T – 239-252).   In March 2008, Dr. Vandewalle opined that the Plaintiff's condition met Listings 12.04 and 12.05, and that she suffered from major depression with marked restrictions in social functioning and concentration, persistence and pace.   (T – 232-236).   Dr. Wager opined in notes dated March 27, 2008 that the Plaintiff's borderline intellectual functioning and depression prevented her from returning to her past relevant work and from learning any new skills or trade.   (T – 230-231).

Additionally, Plaintiff was evaluated in July 2006 by consultative examiner Dr. Robert Frady

and in February 2008 by consultative examiner Dr. Karl Willers.   (T – 197-202, 222-229).   Dr. Frady

found that the Plaintiff suffered from depression and borderline intellectual functioning, with a

guarded prognosis.   (T – 201).   Based on similar findings, Dr. Willers found that the Plaintiff's

"ability to get out into the world and into the workforce has always been marginal and basically

unsuccessful".   (T – 226).

> The ALJ found that:

>> [c]ontrary to the degree of severity suggested in treating source
>> statements by Drs. Wagers and Vallewalde [sic], attending personnel at
>> Georgia Pines were assisting and encouraging the claimant to pursue
>> employment and vocational training/certification, which they obviously
>> would not have done if they did not consider her mentally capable of
>> doing so.   Treatment records show that the claimant readily responded
>> to anti-depressant medication with significant improvement well within
>> 12 months . . . Mental health treatment notes and documented objective
>> findings in psychological evaluations are not at all consistent with the
>> severe degree of limitations indicated.   There are no functional losses
>> reflected in treatment notes . . . yet we are authoritatively told that the
>> fact that the claimant is unemployed MUST show she is at Listings level
>> depression or conclusorily cannot work . . . Actual treatment records
>> show benign activity levels, no serious problems.   The claimant
>> obtains a [sic] IQ of 72, and Dr. Willers assessed her with borderline IQ,
>> yet then rates her with a GAF of 47-52, despite a benign interview.
>> Significant levels of depression are found due to – again, nothing.
>> Consequently, these unsupported opinions and findings regarding
>> claimant's functional capacity are not of any evidentiary value.

> (T- 20).

A review of the ALJ's findings and the objective medical record reveals that the ALJ's

conclusions regarding the findings of treating and examining physicians are supported by substantial

evidence.   Treatment notes from Plaintiff's treatment at Georgia Pines show that most if not all of

Plaintiff's treatment visits centered on staff encouraging the Plaintiff to find employment or return to

school.   (T – 253-300).   These treatment notes also show that Plaintiff's depression improved over

time and with medication.   *Id.*   As noted by the ALJ, the objective medical record contains no

functional limitations for the Plaintiff apart from those issued by Drs. Vandewalle and Wager in their summary assessments.   The opinions issued by Drs. Vandewalle and Wager do not contain references to specific findings in the treatment records, and in fact conflict and are inconsistent with the objective medical record.

Plaintiff also asserts that the ALJ erred in discrediting Dr. Vandewalle's findings that her mental condition met or equaled Listing 12.04 and his hypothesis that it was "probable" Plaintiff's condition met Listing 12.05.   However, Dr. Vandewalle's conclusions regarding these listings are not supported by and conflict with the objective medical record, which shows that the Plaintiff does not meet the criteria for these listings.

The ALJ concluded that:

> [i]n activities of daily living, the claimant has mild restriction.   In social functioning, the claimant has moderate difficulties.   With regard to concentration, persistence or pace, the claimant has moderate difficulties.   As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria [of Listing 12.04] are not satisfied.

> The undersigned has also considered whether the "paragraph C" criteria are satisfied.   In this case, the evidence fails to establish the presence of "paragraph C" criteria.

> (T – 18).

In order to establish that her impairments meet or equal one or more of those set out in the List of Impairments (Appendix 1, 20 C.F.R. Part 404), a claimant must present specific medical findings that meet the tests for the applicable impairment or medical evidence that demonstrates how the impairment is equivalent to the listings.   *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (plaintiff

6

must "present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency"); *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).   "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.   An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).   Herein, the Plaintiff has failed to establish how her mental condition satisfies either Listing 12.04 or Listing 12.05, and her physicians' conclusory opinions that Plaintiff's condition satisfies these listings will not support such a finding.

To the extent that the Plaintiff asserts that the ALJ erred in disregarding findings of obesity, the Plaintiff has failed to show that her obesity resulted in functional limitations beyond a mere diagnosis. A diagnosis alone is insufficient to support a finding of disability, but must be accompanied by evidence of functional limitation.   *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D.Ala. 2002).

The ALJ properly evaluated the opinions of record from treating and examining sources, and properly considered factors as directed by the Social Security regulations.   As noted herein, none of the physicians reference specific findings from medical treatment records to support their conclusions. The conclusions of disability conflict with the medical record as a whole, which showed that the Plaintiff's depression was controlled with medication and that her intelligence level supported employment and/or further education.   *See* 20 C.F.R. § 404.1527(e)(2) (the Commissioner will "consider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the

7

Commissioner."); *Lewis*, 125 F.3d at 1440 (good cause to discount the opinion of a physician has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.   We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.").

### Conclusion

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of §405(g).   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 2nd day of February, 2012.

s/ *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

asb

8